UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CAROLYN J. MARCUM, )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | No. 3:10-CV-122<br>(PHILLIPS/SHIRLEY) |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 7 and 9] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 11 and 12]. Plaintiff Carolyn Marcum seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On October 25, 2007, the Plaintiff filed an application for a period of disability and disability insurance benefits, claiming a period of disability which began November 1, 2005. [Tr. 80]. After her application was denied initially and also denied upon reconsideration [Tr. 34-40, 42-44], the Plaintiff requested a hearing. On July 15, 2009, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 24-32]. The Plaintiff appeared at the hearing without counsel and elected to proceed *pro se*.

On September 18, 2009, the ALJ found that the Plaintiff was not disabled. [Tr. 17]. The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

**I.   ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since November 1, 2005, the alleged onset date, according to the claimant's earnings record (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: back disorders and fibromyalgia (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) or to lift/carry fifty pounds occasionally and twenty-five pounds occasionally as well as sit/stand/walk six hours of an eight-hour workday.

6. The claimant is capable of performing past relevant work as a supervisor/service clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2005 through the date of this decision (20 CFR 404.1520(f)).

[Tr. 11-17].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d

5

## IV. ANALYSIS

On appeal, Plaintiff argues that the ALJ's disability determination is not supported by substantial evidence, because the ALJ erred in his credibility assessment. The Plaintiff contends that the ALJ's credibility assessment denied the Plaintiff her due process rights because the ALJ had not fully developed the record. [Doc. 9 at 11]. The Plaintiff also argues that the ALJ's credibility assessment is not supported by substantial evidence because it relied upon daily-activities evidence and a single medical source examination. [Doc. 9 at 11-12].

The Commissioner, in response, contends substantial evidence supports the ALJ's finding that Plaintiff's allegations of complete debility were not fully credible and his finding that the Plaintiff retained the residual functional capacity ("RFC") to perform a full range of medium work. [Doc. 12 at 9].

### A. The Credibility Assessment

As stated above, both of the Plaintiff's allegations of error relate to the ALJ's credibility assessment, in which the ALJ stated:

> At the disability hearing, the claimant testified that she suffers from fibromyalgia/constant pain, osteoporosis, osteoarthritis and degenerative disc disease. The claimant stated that she does not cook, visit friends or attend Church. However, the claimant admitted that she is able to wash dishes and do laundry. The claimant asserted that she is unable to stand or to walk for long periods. She also reported that she is able to lift less than five pounds. According to the claimant, she is not able to work due to severe pain. However, Eva Misra, M.D., a consultative examiner, evaluated the claimant on March 4, 2008 and observed that the claimant exhibited full muscle strength and normal mobility (Exhibit 2F), which indicated that the claimant was able to stand and to walk. In addition, Dr. Sandberg, a

6

> physician who treated the claimant, reported that the claimant was caring for her sick husband (Exhibit 8F), which suggested that the claimant was able to function.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment[, finding that the claimant retains the ability to perform the full range of medium work].

[Tr. 15]. The ALJ went on to explain the findings of Eva Misra, M.D., Heather W. Sandberg, D.P.M., Crystal Gue, M.D., John P. Fields, M.D., Joe G. Allison, M.D., and William M. Regan, M.D. [Tr. 15-16].

**B.     Allegations of Error in Making the Credibility Assessment**

The Court will address each of the Plaintiff's two allegations of error in turn.

*1.     Failure to Develop the Record*

The Plaintiff first argues that the rationale the ALJ provided in support of his credibility assessment relies in large part upon the fact that she was caring for her sick husband. [Doc. 9 at 16]. The ALJ stated that treatment notes from a visit with Dr. Sandberg report that the claimant was caring for her sick husband, and the ALJ found the Plaintiff's ability to care for husband to be suggestive of her ability to function. [Doc. 9 at 16]. The Plaintiff argues that "caring for" has numerous meanings and the ALJ erred by not attempting to determine what "caring for" meant during the hearing. [Doc. 9 at 16].

The Commissioner responds that "it was reasonable, based upon the medical evidence, for the ALJ to find that 'caring for' entailed some level of physical functioning." [Doc. 12 at 10].

7

The Plaintiff relies heavily on Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048 (6th Cir. 1983). In Lashley, the Court of Appeals for the Sixth Circuit delineated the ALJ's special duty to develop the record in cases presented by *pro se* plaintiffs, stating:

> An administrative law judge's basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appeals before him. To satisfy this special duty the administrative law judge must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.

Id. at 1051-52 (internal citations and quotations removed).

The Court of Appeals had occasion to review its decision in Lashley, fairly recently, and explained:

> In [Lashley], this Court stated that "an administrative law judge's basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appeals before him." 708 F.2d at 1051. There, the claimant had suffered a stroke and every treating physician had determined that he was permanently disabled. Id. at 1050-51. However, the evidence of the treating physicians was in conflict with the conclusions of the consultative examiners hired by the Social Security Administration. At the hearing before the ALJ, the claimant was questioned only superficially about his ability to perform work. Id. at 1052-53. Given the claimant's health limitations, this Court reasoned that the ALJ had a heightened duty to develop the record. Id. at 1053. Accordingly, this Court held that the ALJ failed to properly develop the record because the ALJ did not adequately probe the claimant's capabilities in light of the diverging accounts offered by medical experts. Id.

Kidd v. Comm'r of Soc. Sec., 283 Fed. App'x 336, 344, (6th Cir. 2008).

In this case, the ALJ did not err by failing to fully develop the record. Initially, the ALJ assured that the Plaintiff's decision to proceed *pro se* was informed, by asking *inter alia*, "Do you understand that if you'd like to get a representative we can adjourn the hearing and you can go get

8

one? You won't have to wait two years again for your hearing[;] it would be more like a month." [Tr. 20]. The ALJ asked the Plaintiff about her work history, determined that she had worked as a service advisor for at least the last fifteen years, and inquired about what that position entailed. [Tr. 22-23].

Thereafter, the ALJ asked numerous questions about the Plaintiff's conditions: "Could you tell me the problems you're having that are keeping you from working?" [Tr. 24]; "Well, tell me about the fibromyalgia. How long have you had that?" [Tr.24]; "And I know there's not a whole log [of] treatment options for that, but you gotten any treatment –" [Tr. 25]; "So, and does the pain get better or worse, does it wax and wane, or are you always constantly in pain." [Tr. 25]; "I don't have any other questions. Is there anything else you want to tell me that I haven't asked you?" [Tr. 27].

Moreover, this case is distinguishable from Lashley, because there are no treating physicians in this case who have indicated that the Plaintiff would be unable to work. The treating, examining, and reviewing physicians found that the Plaintiff had fibromylagia and osteoporosis , but all found she was able to work despite those medical conditions. [Tr. 166, 345, 371]. The case did not present the obvious conflicts between treating and consulting sources that were presented in Lashley, rather this case presents an issue of whether the medical evidence and diagnoses were consistent with the Plaintiff's allegations of extreme pain and restriction on movement. The ALJ questioned the Plaintiff about her conditions, the pain they produced, and her treatment, and he properly developed the record.

In regard to the ALJ's reliance on the "caring for" statement, the Court finds that the ALJ did not err by not delving further into the meaning of Plaintiff's self-reported activity. As the Commissioner notes, Dr. Sandberg's statement implies that Plaintiff's role as a care giver involved

9

physical activity. In December 2008, Dr. Sandberg observed, "She cares for a wheelchair bound ill husband and cannot take the time off that it would require to fix these ailments surgically." [Tr. 381]. In January 2009, Dr. Sandberg stated, "Patient advised that she just can't have surgery at this time because she cares for her husband who has Alzheimer's disease. She is his full time caretaker and I do not feel she would be able to stay off of her foot. The patient agrees." [Tr. 381]. Both of these statements indicate that the Plaintiff's care giving duties involved physical exertion.

In addition, in September 2006, Dr. Gue asked Plaintiff to check into getting regular help to try and "give her a break" in caring for her husband. (Tr. 302). This recommendation by Dr. Gue strongly suggests that Plaintiff's role as a care giver was physical, and not merely providing love and support.

The Court finds that the ALJ's description of the Plaintiff as a care giver for her husband was based on the record evidence, and the Court finds that the ALJ did not err by not further investigating the characteristics of the care giving. The Court finds that the ALJ was "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited," Lashley, 708 F.2d at 1052, and he fulfilled his special duty of inquiry in this case.

Accordingly, the Court finds that the Plaintiff's allegation that the ALJ erred by failing to properly develop the record is not well-taken.

2.   *Reliance on Daily Activities Evidence and Medical Evidence*

The Plaintiff also argues that the ALJ's assessment of Plaintiff's subjective complaints lacks substantial evidence because it cites evidence that is not probative of disability. [Doc. 9 at 17]. Specifically, the Plaintiff contends that the daily activities cited in the ALJ's credibility assessment do not evince an ability of work, and the Plaintiff maintains that the ALJ's reliance on only a single

physical examination could not reveal limitations resulting from fibromyalgia. [Doc. 9 at 17-18].

In response, the Government argues that the ALJ's decision to incorporate the Plaintiff's testimony in his decision was reasonable, especially since he remarked both that the Plaintiff stated she could complete laundry and wash dishes, to a degree, and he noted that she did not cook, visit friends, or attend church. [Doc. 12 at 11]. The Commissioner maintains that the ALJ did not rely on only a single objective examination in discrediting the Plaintiff's subjective complaints. [Doc. 12 at 13].

In support of her position, the Plaintiff cites the Court to Rogers v. Commissioner of Social Security, 486 F.3d 234 (6th Cir. 2007), wherein the Court of Appeals for the Sixth Circuit discussed the use of objective evidence in determining whether fibromyalgia was debilitating. The court explained that "the nature of fibromyalgia itself renders such a brief analysis and over-emphasis upon objective findings inappropriate." Id. at 248. In Rogers, the court found that, "[b]y focusing on purely objective evidence, the ALJ failed to discuss or consider the lengthy and frequent course of medical treatment or the nature and extent of that treatment," and mischaracterized the Plaintiff's daily activities. Id. Thus, the court found that the ALJ decision in Rogers did not contain specific reasons for the finding on credibility, supported by the evidence in the case record, and was not sufficiently specific. Id. at 249.

The Court finds that the ALJ's decision in Rogers is not analogous to the instant case. In Rogers, the ALJ mischaracterized Rogers's activities. Id. at 248-49. For example, the ALJ noted that the Rogers cared for two dogs, when Rogers had indicated that the extent of her care for her dog included opening the door to let him out in the morning. Id.

In this case, the ALJ presented both portions of the Plaintiff's testimony that would support

11

her subjective complaints, *i.e.* the fact that she did not visit others or go to church, along with those portions of the testimony that did not support Plaintiff's subjective complaints, *i.e.* her ability to do laundry and wash dishes. The Plaintiff's testified, "I do one or two loads [of laundry], and then I'm not able to do anymore. I have to wait another day. As far as washing dishes, I do wash dishes some, but I do not cook that much." [Tr. 26]. The ALJ's statement that the Plaintiff could do dishes and laundry was not a mischaracterization of this testimony. Moreover, the ALJ did not rely on these daily activities alone in making his credibility decision; he, instead, considered the opinions of numerous medical sources found in the record.

Finally, the Plaintiff argues that "the ALJ Decision points to clinical findings from a single examination from a consultative examiner to support the ALJ's finding that Plaintiff's allegations are less than credible." [Doc. 9 at 19].[1]

Contrary to this assertion, the ALJ relied on numerous sources in making his decision. At the bottom of page five of his decision, the ALJ discussed Dr. Misra's findings, including her findings that the Plaintiff had normal gait/station, normal mobility, full grip strength, full strength in all major muscle groups, and full range of motion, with the exception of the lumbar spine. [Tr. 15]. On page six, the ALJ discussed an MRI scan ordered by Dr. Gue, Plaintiff's primary care physician, which revealed only mild degenerative changes. [Tr. 16]. He also noted Dr. Gue's finding that the Plaintiff's fibromyalgia had been stable and her gait and motor function were intact. [Tr. 16]. Finally, on page six, the ALJ discussed the findings of the reviewing physicians, including Dr. Allison and Dr. Fields's opinions that the Plaintiff was able to perform medium work and sit/stand/walk six hours in an eight-hour workday. [Tr. 16]. Based upon the foregoing, the Court

---

[1] The Plaintiff does not identify who this consultative examiner is, but the Court will assume that the examiner is Dr. Misra.

finds that the ALJ did not merely rely on Dr. Misra's opinion, but instead, he considered the numerous medical source opinions in the record in reaching his credibility determination.

In sum, the Court finds that the ALJ relied upon the evidence in the record in making his credibility assessment. The ALJ did not improperly rely on the Plaintiff's reported daily activities or mischaracterize these activities, nor did he rely on a single medical opinion to the exclusion of the other opinion evidence in the record. Accordingly, the Court finds that the Plaintiff's allegation that the ALJ erred by relying on improper evidence in making his credibility determination is not well-taken.

## V. CONCLUSION

Based upon the foregoing, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing medium work. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[2] that Plaintiff's Motion For Summary Judgment **[Doc. 7]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 11]** be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[2]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).